IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:17-CR-00054-001 |
| vs. | : | JUDGE JAMES L. GRAHAM |
| ZA DARRICK JEROME BROOKS, | : | |
| Defendant. | : | |

**DEFENDANT'S SENTENCING MEMORANDUM
AND
UNRESOLVED OBJECTIONS TO THE PRESENTENCE REPORT**

ZaDarrick Brooks, by and through undersigned counsel, hereby files his sentencing memorandum and unresolved objections to the presentence report.

**I.     Unresolved Objections to the Presentence Report.**

(A) Mr. Brooks objects to the application of a 16-level enhancement for an intended loss amount of roughly $1.8 million. PSR ¶¶39, 48.  Neither the presentence report nor the discovery reflect an intended loss amount anywhere near this amount.  Indeed, the loss reflected in indictment and the complaint is approximately $1 million less than the calculation set forth in the PSR.  The plea agreement stated a loss amount of between $150,000 and $250,000.   PSR ¶23.  The parties further agreed that this loss amount would generate a 10-level increase to the base offense level of 7.  PSR ¶23.  That loss amount was supported by the discovery and was reasonably foreseeable by Mr. Brooks.  Mr. Brooks relied on the afore-mentioned agreements in agreeing to plead guilty and subsequently entering his guilty plea.

The presentence report correctly states that "intended loss" means "reasonably foreseeable pecuniary harm" resulting from the offense.  But there are several problems with attributing to Mr. Brooks the full amount of loss caused by others:  (a) intended loss does not include unforeseeable harm caused by others involved in the offense, and (b) to do so in this case undercuts the agreement made between Mr. Brooks and the government.

Thirteen people have been charged in this case.  Mr. Brooks was charged and brought to court for prosecution on February 13, 2017, and he was the first to plead guilty.  Mr. Brooks had no way of foreseeing what the others were doing when he was not present, or after he was charged and dealing with his case.  More importantly, the plea agreement agreed that to a base offense level of 7, a 10-level increase for amount of loss (stated as between $150-250,000), a 2-level increase for number of victims, and a 3-level reduction for acceptance of responsibility.  If Mr. Brooks is to receive the benefit of his bargain, as written into the Plea Agreement by the government, he should be sentenced according to the agreements set forth in the Plea Agreement.

(B)  Mr. Brooks further objects to the application of a 4-level adjustment for role in the offense.  ¶¶52-53.  In the plea agreement, the parties agreed that Mr. Brooks would receive a 2-level adjustment specifically under §2B1.1(b)(2)(A)(i), because there were more than 10 victims.  That adjustment was applied in ¶49 of the report.  The application of an additional 4-level adjustment under §3B1.1(a) constitutes impermissible double counting.

Although the presentence report asserts that Mr. Brooks organized the scheme (¶¶36-37); the Report provides no facts to support that assertion.  The report states that although he received the largest monetary benefit, he neither sold postal keys to others nor recruited other participants.  Furthermore, the Plea Agreement reflects that the parties did not contemplate that Mr. Brooks was in a leadership role.  Indeed, the Factual Basis for the Plea Agreement consistently states

that Mr. Brooks "and his co-conspirators" solicited other individuals to participate and to allow use of their bank accounts. This statement puts Mr. Brooks on an equal footing with "his co-conspirators." As a result, the leadership role adjustment should not be applied.

Based on the foregoing, Mr. Brooks' total offense level should be 16, as opposed to 26, resulting in an advisory guidelines range of 21-27 months of incarceration.

## II. SENTENCING LAW

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court formally announced the following two-step analysis that a district court should apply to determine a sentence that is sufficient, but not greater than necessary, to vindicate Congress' mandate that was codified for sentencing:

> (1) a district court should begin all sentencing proceedings by correctly calculating the applicable guideline range. *Id*. at 49. The Court noted that the Guidelines are the starting point and the initial benchmark." *Id.* Undoubtedly, part of this determination would also require the district court to assess the propriety of a departure from the otherwise applicable guideline range; and (2) "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50.

The Court "may not presume that the Guideline range is reasonable." *Id.* at 50. Rather, the Court must make an "individualized assessment based on the facts presented." *Id.*

### III. Guideline Calculations

The probation officer has made the following calculations in this case:

Base offense level §2B1.1 (a)(1)            7

3

| | |
|---|---|
| Loss | 16 |
| Role in the Offense | 4 |
| Acceptance of responsibility | - 3 |
| Total adjusted offense level | 26 |
| Criminal History Category | I |
| Advisory Guideline Range | 63-78 months prison |

The defense does not agree with those calculations.

### III.    §3553(a) Factors

**(a)(1)  History and Characteristics of the Defendant and Nature and Circumstances of the Offense**

Mr. Brooks was raised in a strong and caring family.  For several years leading up to this case, his mother was living and working for the government, in Afghanistan.  The family remains committed to Mr. Brooks and his children (the youngest was born during his incarceration), and they will be there for him when he is released from prison.  The family has made a point of learning more about substance abuse as a result of this case, which strongly suggests that they are prepared to do everything they can to support him.

Mr. Brooks has only one previous non-traffic related brush with the law, and it supports the likelihood that the instant case is related to his substance abuse and a diagnosed anxiety disorder.  Shortly before the start of the conspiracy in this case, he pled guilty to an offense related to obtaining narcotics.  The instant conspiracy began soon afterwards.

**(a)(2)   Seriousness of Offense, Just Punishment, Adequate Deterrence, Protection of the Public, Treatment**

The Court must consider many factors, including deterrence. Many within the criminal justice system have begun to recognize that the most effective method of promoting deterrence and curbing recidivism is not through imprisonment, but through changing an offender's outlook and perception of life, and equipping him or her with the tools needed to thrive in a disciplined community. *See*, *What Works? General Principles, Characteristics, and Examples of Effective Programs*, Ohio Department of Rehabilitation and Correction, Office of Policy and Offender Reentry, 20101 ("There is no evidence that incarceration deters subsequent criminal behavior"); 18 U.S.C. §3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation"). As a result of recognizing the importance of changing the offender's perceptions and providing necessary life tools, many courts have started implementing non-incarceration alternatives. By employing a combination of punitive sanctions and treatment services, courts have seen remarkable results in reducing recidivism, especially in high risk offenders. *What Works? General Principles, Characteristics, and Examples of Effective Programs*, Ohio Department of Rehabilitation and Correction, Office of Policy and Offender Reentry, 2010.

There is no question that the 13 participants in this case caused a substantial loss. Although the period of pretrial incarceration has given Mr. Brooks the opportunity to quit taking drugs, he will come out of his incarceration owing a substantial amount of restitution. The defense submits that the need to pay restitution, while supporting his child, is a more pressing need than the need for a substantial prison sentence. The Court has alternatives to imposing a lengthy prison sentence. Certainly, restitution is important. But helping Mr. Brooks in his journey to sober living is at least equally important.

**(a)(3)(4)(5)   Available Sentences, Sentencing Range, Pertinent Policy Statements**

Although a period of incarceration was always expected, as calculated by the probation department the projected period of incarceration is vastly higher than what was anticipated when Mr. Brooks signed and entered his guilty plea.  Mr. Brooks has a drug problem, but he is far from "unsalvageable."  He has a supportive family, several children to whom he is devoted, and since being in jail he has emerged from his own denial.  Now is the time for treatment and support.

The Court should impose a lesser prison term, consistent with the guidelines calculations agreed to in the Plea Agreement.

DATED this 12th day of May, 2018.

        Respectfully submitted,

        DEBORAH L. WILLIAMS
        FEDERAL PUBLIC DEFENDER


           /s/  Deborah L. Williams
        Deborah L. Williams  (AZ 010537)
        Federal Public Defender
        Federal Public Defender's Office
        10 West Broad Street, Suite 1020
        Columbus, Ohio 43215-3469
        (614) 469-2999
        Deborah_Williams@fd.org

        Attorney for Defendant
        Za Darrick Jerome Brooks

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing was electronically served upon Jonathan Grey, Assistant United States Attorney, Office of the United States Attorney, 303 Marconi Blvd., Suite 200, Columbus, Ohio 43215 this 12th day of May, 2018.

    /s/  Deborah L. Williams
Deborah L. Williams   (AZ 010537)
Federal Public Defender

Attorney for Defendant
Za Darrick Jerome Brooks